UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JEFFREY PEARSON,

    Plaintiff,

v.                                                   ACTION NO. 2:14CV88

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Jeffrey Pearson ("Pearson" or "plaintiff") brought this action under 42 U.S.C. §§ 1383(c)(3) and 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act. Both parties filed motions for summary judgment. See (ECF Nos. 12, 14). The action was referred to a United States Magistrate Judge for a Report and Recommendation pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the decision of the Commissioner be affirmed.

## I. PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on April 13, 2009. (R. 198-206). His application alleged disability since February 5, 2009 due to a variety of impairments, including back pain, shin splints, and carpal tunnel syndrome. (R. 204, 241). The Commissioner denied his application initially and upon reconsideration. (R. 35-41). Pearson made a timely request for a hearing

1

before an administrative law judge ("ALJ"), which was held on October 6, 2010. The ALJ found Pearson not disabled and he appealed. On May 17, 2012, the claim was remanded for further review.

On August 16, 2012, a different ALJ conducted a second hearing and again found plaintiff was not disabled within the meaning of the Social Security Act, and denied his claim for DIB and SSI. (R. 8-26). Pearson again requested review by the Appeals Council. This request for review was denied on January 8, 2014, (R. 1-5), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), Pearson filed this action seeking judicial review of the Commissioner's final decision on his denied claim. This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Pearson was born in 1963 and was 45 years old at the time of the alleged onset of disability, and was therefore considered to be a younger individual pursuant to 20 C.F.R. §§ 404.1563(c) and 416.963(c). (R. 25). He has a high school education, spent two years in the Navy and has past work experience in food delivery, grounds maintenance and as a press operator. Plaintiff worked a variety of jobs full time until 2009, when he was laid off from his position as a press operator, making plastic parts. (R. 84-87, 241).

Pearson's voluminous medical record is comprised primarily of records from the Veterans Administration (VA) facilities where Pearson has been treated since July 2009. (R. 679). On that date he presented with complaints of acid reflux, multi-site joint pain and anxiety

with disturbed sleep.[1] (R. 680-81). His treating physician, Dr. Ramona Ramrup, prescribed medication for acid reflux and ordered a CT scan and additional testing. (R. 681). The CT scan revealed degenerative changes of the lumbar spine. (R. 1343-44). An MRI of Pearson's right shoulder also showed degenerative changes at the acromioclavicular joint and other findings suggestive of rheumatoid arthritis. (R. 1344-45). Other testing, including x-rays of Pearson's hands ruled out rheumatoid arthritis. (R. 1343, 1337, 653).

Also in July 2009, Pearson was evaluated for his complaints of anxiety by psychiatrist, Carmen Espaillit-Serje, M.D. Pearson was described as tearful and sad with a depressed mood. Dr. Espaillit-Serje diagnosed major depressive disorder – single episode, and bereavement. Pearson's longtime partner had recently died. (R. 656-57). Dr. Espaillit-Serje prescribed medication and individual psychotherapy which Pearson regularly attended, reporting steady progress. (R. 505, 518, 524, 542, 595-96). Although Pearson described an incident in the military where he was harassed for being homosexual, his doctors concluded he did not meet the criteria for PTSD. (R. 78-79, 523). Still, he had extensive treatment at the VA for his mental health issues, including regularly attending group therapy. (E.g., R. 1471, 1476, 1484, 1516, 1796, 1823-24, 1866, 1920).

In September 2010, Pearson underwent additional testing and treatment for orthopaedic complaints. He consulted with Dr. Gary Miller who concluded he had right shoulder synovitis and carpal tunnel syndrome. He underwent another MRI of his shoulder and scheduled surgery, but the surgery had not occurred prior to the 2012 hearing. (R. 1258-60; 52-53). Pearson did receive regular medication and occasional injections to control his shoulder pain. (R. 594, 1514, 1662-63, 1832-33).

---

[1] Neither Pearson nor the Commissioner rely extensively on a detailed examination of Pearson's medical record to address the assignments of error in this appeal. Accordingly, the Court has limited its recitation of the record to those general complaints most relevant to the issues presented.

At the hearings before the ALJ, Pearson testified in unusual detail concerning his impairments and activities of daily living. He described developing shin splints while in boot camp in the Navy in the early 1980s. (R. 57). He also developed a hearing problem which was corrected with surgery. (R. 653). He claims to have acquired PTSD as a result of an incident of harassment over his sexual orientation while serving in Italy in the United States Navy. (R. 77-79).

In September 2008, Pearson lost his partner of 25 years and, shortly after that in February 2009, was laid off from his job as a press operator. (R. 38-33, 56). Thereafter he trained to become a life insurance salesman, but testified that he "just couldn't do it" because he was uncomfortable selling insurance to elderly customers at inflated rates. (R. 56). At the time of the second hearing, Pearson had recently relocated to Virginia but he described previously residing with his mother on rural property in Arkansas. (R. 39). During that time he helped clear an acre of land using a chainsaw in 2011, approximately two years after his alleged onset date. (R. 55). He testified to completing high school and being able to handle all of his personal grooming, drive his own vehicle, balance a checkbook, and shop for himself. (R. 32, 46). He described regular travel, including an annual vacation with friends in Augusta, Georgia. (R. 60-61). His medical records also contain regular references to leisure travel and a relatively active social life. (R. 852, 861, 818, 1116, 1180, 1986).

In addition to Pearson's testimony, the ALJ received evidence from a Vocational Expert ("VE"). The VE examined Pearson about the nature of his previous employment, and characterized his previous jobs in food delivery, grounds maintenance and manufacturing as medium unskilled jobs. (R. 85-86). The ALJ then asked the VE to consider a hypothetical individual with Pearson's age, education and experience who could perform simple routine tasks

requiring lifting and carrying no more than 10 lbs. frequently and 20 lbs. occasionally, standing and walking six hours in an eight hour day, but only occasional lifting and reaching overhead with the non-dominant upper extremity, occasional bending, stooping, crouching, kneeling and crawling, and ambulating only on level surfaces. (R. 86-87). The VE identified three jobs which the hypothetical individual could perform, including unskilled light work as a motel cleaner, cashier, and machine tender/bench operator. (R. 88-89). Thereafter, the ALJ asked the VE if a limitation to only face-to-face communication would alter the individual's ability to perform any of these three jobs and the VE testified that it would not.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner⁗s]

designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. § 1382(a) and (b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. § 1381(a) and § 1382(c).

The Social Security Regulations define "disability" as the: "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

A.  **ALJ's Decision**

In the present case, the ALJ made the following findings under the five part analysis: (1) the ALJ found that Pearson had not engaged in substantial gainful activity since February 5, 2009 (the alleged onset date of disability); (2) Pearson had severe impairments of right shoulder tendonitis, synovial lesion, left ear disorder, diffuse joint pain due to arthritis, back pain, carpal tunnel syndrome of the right wrist, anxiety and depression; (3) his impairments (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) Pearson was unable to perform past relevant work, but had the RFC to perform a modified range of unskilled light work; and (5) considering Pearson's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Pearson could perform. (R. 13-26).

In plaintiff's motion for summary judgment, he alleges that the ALJ erred by not resolving a conflict between the job descriptions offered by the VE and the characteristics of those jobs in the Dictionary of Occupational Titles (DOT). He also argues the ALJ failed to include all of his limitations in the hypothetical presented by the VE and improperly assessed his credibility. The Court will address each of these arguments.

B.  **The ALJ did not fail to resolve any conflict between the VE's testimony and job descriptions in the DOT.**

Pearson first argues that the ALJ erred by not resolving an alleged conflict between the VE's testimony and the jobs he identified in the DOT. In assessing Pearson's disabled status, the ALJ considered both the DOT and VE testimony. See Fisher v. Barnhart, 181 Fed. App'x 359, 365 (4th Cir. 2006) (unpublished per curiam); SSR 00-4p; 2000 WL 1898704, at *2 (noting that the DOT and testimony of the VE should typically be consistent). Social Security Regulations

provide that "when there is an apparent unresolved conflict between [VE] evidence and the [DOT], the adjudicator must elicit a reasonable explanation for the conflict . . ." and "resolve the conflict by deciding if the [VE's] explanation for the conflict is reasonable." Fisher, 181 Fed. App'x at 365 (citing SSR 00-4p). Before relying on the VE's testimony to make a disability determination, the ALJ must resolve any apparent conflict. Id.

In this case, the ALJ determined that Pearson's RFC restricted him to a limited range of unskilled light work. Specifically, he found Pearson had the ability to lift and carry 20 lbs. occasionally, 10 lbs. frequently, stand or walk six hours in an eight hour day and further limited him to only "occasional overhead lifting/reaching using the non-dominant upper extremity," in addition to other postural limitations. (R. 16). At the hearing, the ALJ included these limitations in a hypothetical requesting that the VE identify any jobs available in the national economy which such a person could perform. (R. 87). The VE testified that such a person could perform the job of "motel cleaner" identified as DOT Job No. 323.687-014; Cashier II, DOT Job No. 211.462-10; and machine tender/press operator, DOT Job No. 690.685-14. (R. 87-89). At the beginning of his testimony, the ALJ also asked the VE to advise both himself and counsel if his testimony differed from the descriptions in the DOT. The VE agreed to do so, and in describing the three positions, he did not note any conflict. (R. 84). The ALJ relied on this testimony in concluding that Pearson's RFC would permit him to perform all three jobs. (R. 26).

Pearson's counsel made no objection to the VE's testimony, nor did he point out at the hearing any apparent conflict between the DOT job descriptions and the VE's conclusion that a hypothetical person with limited overhead reaching could perform all three jobs. However, in this Court Pearson alleges that the ALJ had an obligation to resolve a conflict between the VE's testimony and all three job descriptions. He argues that the DOT description for each of the

positions requires "frequent reaching," and that this conflicts with his RFC limitation of only occasional overhead reaching. (ECF No. 13, at 19).

"Reaching" is not defined in the DOT but rather in a companion guide, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (Dep't of Labor 1993) (SCO). The SCO defines reaching as "extending hands and arms in any direction." SCO Appendix C, at C-3. Because the SCO defines reaching to include overhead reaching, Pearson argues that there was a conflict with the VE's testimony which the ALJ failed to adequately resolve.

As yet, the Fourth Circuit "has declined to place an obligation on the ALJ to uncover conflicts between VE and DOT evidence, but requires the ALJ to inquire if discrepancies between a VE's testimony and the DOT exist and to resolve such discrepancies." Stuckey v. Colvin, No. 2:12cv386, 2013 WL 6185837 at *3 (E.D. Va. November 25, 2013) (citing Justin v. Massanari, 20 F. App'x 158 (4th Cir. 2001)). The rule requiring explanation of a conflict "does not require an ALJ to 'conduct an independent investigation into the testimony of witnesses nor is an ALJ required to explain how a conflict was resolved if 'the plaintiff did not bring the Vocational Expert's mistake to the ALJ's attention.'"). Smith v. Colvin, No. 3:13cv17, 2013 WL 5966427, at *4 (N.D. W. Va. Nov. 8, 2013) (quoting Boggs v. Astrue, 2012 WL 5494566, (N.D. W. Va. Nov. 13, 2012). Similarly in Justin, an unpublished opinion, the Fourth Circuit held that the ALJ must only address evidence discrepancies between a VE's testimony and the DOT, and is not obligated to uncover those discrepancies. 20 F. App'x at 160.

In this case, the ALJ relied on the VE's testimony that his descriptions of the work were consistent with the DOT. While that blanket statement may not be sufficient to discharge his obligation in every case, it is sufficient here where the DOT job description does not clearly

conflict with the VE's testimony. As the Commissioner observes, all three job descriptions in the DOT involve frequent reaching. Reaching is defined as extending arms or legs in any direction. There is nothing inconsistent with the VE's testimony that a hypothetical person with limitation to "occasional overhead reaching" affecting only one of his arms could perform these three jobs. Pearson, for example, was unlimited in overhead reaching on the left side, and not otherwise limited in his ability to reach in any direction with his right side. Accordingly, there is no actual or apparent inconsistency between the VE's testimony that a person with such limitations could perform these three jobs as they are described by the DOT. As a result, the ALJ was not under any affirmative duty to "elicit a reasonable explanation for the conflict." Fisher, 181 F. Appx. at 365. To the extent Pearson or his counsel believed there was an inconsistency which required explanation, it was incumbent upon counsel to point it out. See, e.g., Schrader v. Astrue, No. 3:12cv54, 2013 WL 1192315, at *5-6 (N.D. W. Va. Mar. 2, 2013). Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000) ("claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."). Because the undersigned finds no conflict in the VE's testimony and the DOT job descriptions relied upon by the ALJ, this assignment of error provides no basis for remand or reversal.

C.  **The hypothetical presented to the VE and Pearson's RFC adequately reflected the limitations found by the ALJ.**

Pearson's next argument relates to the limitations described in the ALJ's hypothetical to the VE. In reaching his decision that Pearson was capable of performing work in the national

11

economy, the ALJ relied on the VE's testimony in response to these hypotheticals. When relying on VE testimony based on hypothetical questions, the hypotheticals posed must account for all of the claimant's limitations as shown by the record. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (citing Walker, 889 F.2d at 50). Failing to consider limitations shown by the evidence, and then relying upon the errant hypothetical to form an opinion about the availability of work suitable to the claimant is error. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D. Va. 2002). Pearson claims the ALJ erred by concluding that Pearson could perform light work and including that exertional level in the hypothetical, despite medical evidence of his shin splints and leg pain. He claims his leg impairments would not permit the extended standing or walking required by light work, including the three positions identified by the VE. After reviewing the VE's testimony and Pearson's arguments, the undersigned finds no error in the ALJ's analysis.

On examining the VE, the ALJ first asked him to characterize Pearson's past work. The VE then examined Pearson concerning a prior position as press operator. After hearing Pearson's description of his former job, the VE stated that this position was characterized by the Dictionary of Occupational Titles (DOT) as light unskilled, but based on the lifting Pearson described it could have been performed as medium work. (R. 84-86). He also described Pearson's other positions, including pizza delivery and groundskeeping as unskilled medium work. (R. 84). Next, the ALJ crafted a hypothetical including Pearson's age and past experience and all of the limitations he later imposed in his RFC. The ALJ asked whether such a person could perform any of Pearson's past work. In response to this question, the VE stated that the hypothetical individual could not perform any of Pearson's past work. (R. 87). The VE then

offered three positions which such an individual could perform. The ALJ's opinion relied on the hypothetical and the VE's testimony in concluding work was available to Pearson. (R. 26).

The ALJ's RFC and hypothetical adequately reflect the limitations he imposed. At the hearing, Pearson's counsel did not suggest any particular limitation as an additional restriction, nor did he pose his own hypothetical to the VE. The ALJ's hypothetical included restrictions that he stand or walk up to six hours in an eight-hour day, limited his lifting and carrying, imposed several postural limitations and the avoidance of uneven surfaces. These limits adequately address Pearson's impairments. In arguing to the contrary, Pearson does not identify any medical record or objective finding which was not accommodated by his RFC. Instead, he makes the general complaint that the ALJ erred by concluding he could perform light work because his "chronic shin splints and leg pain" would preclude the walking required by light work.

Light work involves lifting "no more than 20 pounds at a time . . . with frequent lifting of items weighing up to 10 lbs." 20 C.F.R. § 404.1567(b). A good deal of walking and standing is also required. Id. However, given Pearson's own testimony involving the extent of his daily activities, the ALJ's RFC for modified light work accommodates his needs. No physician has suggested Pearson's leg pain would affect his ability to walk as required by light work, nor has Pearson cited to any medical record suggesting he was so limited. Although it is true that Pearson occasionally used a cane, it does not appear that it was prescribed by his doctor as medically necessary. (R. 655-56). Moreover, later in his treatment he told his physicians he had stopped using the cane. (R. 1473). Finally, the ALJ recognized that Pearson occasionally used a cane, which he accommodated by limiting his ambulation to flat level ground. (R. 23).

Because Pearson has not indicated – and the Court's own review has not disclosed – any evidence from a treating or examining physician that suggests he suffered from any greater impairment than what the ALJ noted, substantial evidence supports the ALJ's RFC determination and the hypothetical incorporating those limits. Accord Johnson, 434 F.3d at 659.

### D. The ALJ properly evaluated Pearson's credibility.

Pearson also argues that the ALJ erred in finding Pearson's complaints of disabling limitations inconsistent with the medical record and failing to account for these limitations in his hypothetical. The ALJ specifically found that the treatment records do not reflect the degree of limitation Pearson alleged. (R. 22). He relied on this factor to impose a limitation to light work, which he held would accommodate "some level of discomfort." Id.

In deciding whether a plaintiff is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 404.1529(a). A plaintiff's subjective statements about pain or other symptoms alone are not enough to establish disability. Id. Under both federal regulations and Fourth Circuit precedent, determining whether a person is disabled by pain or other symptoms is a two-step process. First, the plaintiff must satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594-95. "However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig, 76 F.3d at 592-93 (quoting Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986)).

After the plaintiff has satisfied the first step, the ALJ must evaluate the intensity and persistence of the plaintiff's symptoms and the extent to which they affect her ability to work. 20

C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the plaintiff's history, including her own statements, Id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," Id. § 404.1529(c)(2); and (3) other evidence submitted by the plaintiff relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, Id. at § 404.1529(c)(3).

In evaluating the intensity and persistence of the plaintiff's symptoms and the extent to which they affect his ability to work, the ALJ must consider whether inconsistencies exist and the extent to which there is conflict between the plaintiff's statements and the other evidence. Id. § 404.1529(c)(4). According to the regulations, a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id.

Although Pearson satisfied his initial burden under the two-step inquiry set forth in the regulations and adopted by the Fourth Circuit, the ALJ found that Pearson's statements regarding the limiting effects of these symptoms were inconsistent with the objective medical evidence and his activities of daily living. (R. 22-23). In so finding, the ALJ considered the entire record and documented his review in detail in the opinion. He specifically observed that despite his allegedly disabling pain, Pearson engaged in extensive activities of daily living. (R. 55, 57, 60-63). As referenced previously, Pearson testified that he had led a rather active lifestyle, including regular travel for pleasure, performing household duties, and caring for pets. (R. 23,

24). Pearson does regular volunteer work, drives his own truck, shops in stores, and goes outside frequently (3-4 times per day).

As the ALJ noted – in an underlined portion of his opinion – Pearson testified that he and his 76-year old mother had cleared an acre of timberland using a chainsaw in the year preceding the hearing (two years after his alleged onset date). (R. 23). While Pearson's counsel observes this occurred in the preceding year, there is nothing in the medical record to suggest Pearson's physical impairments substantially worsened after that time. Moreover, Pearson has not identified any medical record or objective finding suggesting that they had. To the contrary, in 2011 and 2012 most of his medical evidence related to his mental health issues. At a group session in 2011 he described "walking" as an activity he used to relieve stress. (R. 1498). His consultations with orthopaedic providers related almost exclusively to his shoulder. Although he continued to complain of leg pain, his doctors seem to have been unable to identify a particular cause. (R. 1598-99).

The ALJ noted that while Pearson reported complaints of pain due to his shoulder condition and arthritis, these limitations have been accommodated by limiting him to a modified range of light work, which is consistent with the exertional level of his activities of daily living. In so holding, the ALJ complied with both the regulations and Fourth Circuit precedent in evaluating Pearson's testimony, and supported his decision with substantial evidence.

To the extent Pearson contends that the ALJ erred in evaluating his credibility, the Court must give great deference to the ALJ's credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstance.'" Id. (quoting NRLB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept

the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). Here, the ALJ performed the required analysis and articulated a number of reasons for not fully crediting Pearson's statements. There is ample objective evidence in the Record to contradict Pearson's self-report of disabling limitations and to support the ALJ's credibility determination. Accordingly, the Court finds the ALJ properly evaluated Pearson's credibility.

## V. RECOMMENDATION

Because the ALJ did not need to analyze any conflicts between the VE's testimony and the DOT, and he correctly evaluated Pearson's credibility and the medical evidence in framing his hypothetical, his conclusion that Pearson was not disabled is supported by substantial evidence. Accordingly, the undersigned recommends that Pearson's motion for summary judgment (ECF No. 12) be DENIED, that the Commissioner's motion for summary judgment (ECF No. 14) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

October 1, 2014

18